IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
AMERISOURCEBERGEN DRUG          :
CORPORATION,                    :
                Plaintiff,       :
                                :
        vs.                     :    No. 2:09-cv-1166
                                :
KOHLL'S PHARMACY AND            :
HOMECARE, INC.,                 :
                Defendant.       :
_____:

**PLAINTIFF'S PRETRIAL MEMORANDUM**

      Pursuant to the Court's November 13, 2009, Scheduling Order (Docket No. 9) and Local Rule of Civil Procedure 16.1(c), Plaintiff AmerisourceBergen Drug Corporation ("ABDC") hereby submits its pretrial memorandum in the above-captioned matter against Defendant Kohll's Pharmacy and Homecare, Inc. ("Kohll's").

**I.**      **Brief Statement of the Nature of the Action and Basis of Jurisdiction**

      As outlined below in the Brief Statement of Facts, ABDC and Kohll's entered into a Prime Vendor Agreement ("PVA") for the purchase of pharmaceutical products. Kohll's breached that contract in at least two ways: (i) Kohll's did not meet the minimum aggregate purchase requirement of ¶ 3(A) of the "Pricing/Payment Terms" attached to the PVA as Exhibit 1; and (ii) Kohll's terminated the PVA before satisfying the term requirement in ¶ 6 of the Agreement.

      This Court has jurisdiction pursuant 28 U.S.C. §§ 1332(a)(1) and 1441(b).

## II.     Brief Statement of Facts

### A.     The Parties

ABDC is a national, wholesale distributor of pharmaceutical and other products and services, including prescription and over-the-counter pharmaceuticals, nutritional, health and beauty care, and home health products.  Kohll's is primarily a retail chain of seven pharmacies that sells pharmaceutical supplies, medical supplies, and other related products and services to the general public.  Kohll's employs about 150 people and is comprised of multiple different business units that have a combined annual sales volume of approximately $33,000,000.  This includes revenues from such diverse sources as seven pharmacies, two compounding stores, a medical equipment company, a construction company, an oxygen supply service, and a business that performs van conversions.  David Kohll is the president of Kohll's, and has the authority to make business decisions that bind the company.

### B.     The PVA Between ABDC and Kohll's

ABDC and Kohll's executed a contract, the Prime Vendor Agreement ("PVA"), on January 23, 2006.  The PVA provides that "[t]he parties intend by this Agreement to set forth their obligations to each other for an arrangement under which ABDC will provide Products and services to [Kohll's]."  "Products" is defined in the PVA as prescription and over-the-counter pharmaceuticals, nutritional, health and beauty care, and home health care products.

The term of the PVA is from January 23, 2006, through January 31, 2012.  The PVA required Kohll's to make certain minimum purchases from ABDC on both an annual basis and over the life of the Agreement.  Specifically, the Agreement stated that Kohll's must buy at least $15,600,000 in Products during the first year of the PVA, and that this annual minimum purchase level would increase by 5% in each succeeding year.  The PVA also provided that Kohll's

"aggregate Net Purchase volume over the life of [the] Agreement will be no less than $106,089,000."

Paragraph 5 of Exhibit 3 to the PVA provides that "either party may immediately terminate this Agreement for cause upon written notice to the other party upon," for example, and without limitation, if the other party took certain bankruptcy-related steps or became insolvent. Paragraph 5 of Exhibit 3 also states that: "'For cause' does not include [Kohll's] receiving a more favorable offer from an ABDC competitor."

Under the terms of the PVA, ABDC agreed to pay Kohll's a series of rebates, representing advance discounts on Kohll's future purchases. The "Initial Rebate" of $130,000 was payable to Kohll's on or before February 23, 2006. A "Second Rebate" of $125,000 was due on or before January 23, 2007. In addition to this $255,000 in up-front rebates, a "Third" and much smaller rebate of $6,000 was due on March 31, 2006.

Paragraph 7 of the PVA states as follows:

> If (a) [Kohll's] terminates the Agreement prior to January 31, 2009 for any reason other than a default by ABDC; or (b) ABDC terminates the Agreement prior to January 31, 2009 as a result of a default by [Kohll's], [Kohll's] will pay to ABDC as an early termination payment $255,000 less one-thirty-sixth (1/36th) of such amount for each full calendar month from [January 23, 2006] until the event giving rise to termination.

C. **The First Amendment to the PVA**

In 2007, ABDC had an ongoing business relationship with Pharmacy Buying Association ("PBA"). PBA is a group purchasing organization ("GPO") that represents independent pharmacies such as Kohll's for the purpose of, among other things, allowing them to obtain better pricing from wholesalers such as ABDC. Like all GPOs, PBA charges an "administrative fee" for its services. This fee is not paid by the pharmacies directly. Rather, PBA receives its

3

administrative fees from a wholesaler, such as ABDC, based on a percentage of the dollar amount of products that each member buys from that wholesaler. Therefore, the added burden of an administrative fee is a factor that ABDC considers when calculating the best price that it can offer to a customer and still realize an acceptable profit.

Several months after signing the PVA, Kohll's began to consider joining PBA in late 2006. ABDC's initial reaction was that Kohll's finance model under the PVA "couldn't support . . . the fees that are required" by such a change. Because Kohll's was not a member of a GPO when ABDC calculated its pricing, it had not factored the need to pay any administrative fee into its pricing model. The post-facto addition of that extra cost would have reduced ABDC's profits below an acceptable level. Thus, ABDC informed Kohll's it could not pay any administrative fees to PBA. After this problem arose, ABDC negotiated with Kohll's and PBA regarding the administrative fees to reach an acceptable compromise whereby Kohll's could join PBA without forcing ABDC to sacrifice its profits. The result of those negotiations was the First Amendment to the Prime Vendor Agreement ("First Amendment").

The purpose of the First Amendment was to document the fact that ABDC would not pay any administrative fees to PBA notwithstanding the fact that Kohll's had joined that GPO. However, ABDC did agree to pay any periodic purchase rebates that were due to Kohll's through PBA. The First Amendment contained a Section 2.2, which reads as follows:

> 2.2 <u>Termination of Amendment</u>. If Customer terminates its participation in the PBA Program at any time before January 23, 2009 (the "Early Termination Date"), Customer may revert back to the terms of the Agreement immediately in effect prior to the Effective Date and this Amendment shall be terminated in all respects on the Early Termination Date, except that Customer will be obligated under the Agreement for a term continuing until January 23, 2009.

4

The First Amendment was executed on March 26, 2007.  A copy was provided to David Kohll via a letter from Cecile Zeigler at ABDC on April 4, 2007.

### D.     The Integration of the Parties' Agreements

The PVA includes a full integration clause, which states that:

> In the event of a conflict between a prior document between the parties and this Agreement, this Agreement will control.  This Agreement supersedes prior oral or written representations by the parties that relate to its subject matter other than the security interest, which is in addition to and not in lieu of any security interest created in other agreements.

In its Answer to ABDC's Complaint, Kohll's referred to the PVA and the First Amendment as writings or contracts, "the terms of which speak for themselves" collectively or speak for "itself" individually, no fewer than 14 times.

### E.     Kohll's Breaches of Contract

#### 1.     Kohll's Premature Termination of the PVA

On January 6, 2009, after less than three years of purchasing under the PVA, Kohll's notified ABDC that it intended to terminate the PVA, effective January 30, 2009.  Kohll's notice of termination did not purport to terminate the contract "for cause," nor did Kohll's accuse ABDC of breaching any term of the PVA.  Rather, Kohll's notice of termination cited solely and exclusively to ¶ 7 of the PVA as the basis for its termination.  The notice read as follows:

> Pursuant to Paragraph 7 of the Prime Vendor Agreement dated January 23, 2006 between AmerisourceBergen Drug Corporation ("ABDC") and Kohll's Pharmacy & Homecare, Inc. ("Kohll's Pharmacy"), notice is hereby given by Kohll's Pharmacy that it terminates the above Agreement with an effective date of January 30, 2009.  Such termination of said Agreement by Kohll's Pharmacy is for a reason other than a default by ABDC.

On January 8, 2009, counsel for ABDC responded to Kohll's notice of termination.  In this letter, ABDC asserted that ¶ 7 was not an exclusive liquidated damages clause, and did not allow

5

Kohll's to terminate the PVA after only three years of purchases.  On January 13, 2009, counsel for Kohll's replied to ABDC's letter by reaffirming Kohll's intent to terminate the PVA under ¶ 7 of that Agreement.  Kohll's last purchased from ABDC at the end of January 2009.

### 2. Kohll's Failure to Meet the Minimum Aggregate Purchase Volume

David Kohll conceded under oath that Kohll's did not meet the minimum aggregate purchase provision of the PVA, under which Kohll's was obligated to buy a minimum of $106 million in pharmaceutical products from ABDC "over the life of [that] Agreement."  On the contrary, by Mr. Kohll's own estimate, Kohll's had bought less than half of that amount -- $50 million -- when it terminated the PVA after three years of purchases.

### 3. Paragraph 7 of the PVA

ABDC has never waived its right to recover damages for Kohll's breach of contract over and above the repayment of the initial Rebates discussed in ¶ 7.  On the contrary, immediately upon receiving Kohll's notice of termination, ABDC advised Kohll's that ¶ 7 did not constitute an exclusive liquidated damages clause, and affirmatively asserted its right to recover full compensatory damages for Kohll's premature termination.  None of this contemporaneous correspondence between the parties mentions § 2.2 of the First Amendment, nor any other basis or justification for Kohll's decision to terminate the agreement at the three-year mark.

### 4. Section 2.2 of the First Amendment

Kohll's first mentioned § 2.2 in its Answer in this matter.  Neither in its Answer nor anywhere else in the pleadings or discovery has Kohll's ever asserted that it terminated its participation in the PBA Program on or before January 23, 2009.  Rather, David Kohll testified that Kohll's participated in the PBA Program through at least January 30, 2009, which was the date on which he last purchased from ABDC.  Kohll further testified that he took no affirmative

steps to terminate his participation in or to dis-enroll from the PBA Program prior to January 30, 2009, and it is entirely possible that he continued to utilize PBA's services after that date. Membership records obtained from PBA via subpoena indicate that Kohll's was not dis-enrolled and deleted from the PBA system until May 28, 2009.

### F. Conclusion

Accordingly, Kohll's breached the terms of the PVA in at least two ways: (i) Kohll's did not meet the minimum aggregate purchase requirement of ¶ 3(A) of the "Pricing/Payment Terms" attached to the PVA as Exhibit 1; and (ii) Kohll's terminated the PVA before satisfying the term requirement in ¶ 6 of the Agreement.

## III. Plaintiff's Monetary Damages

### A. Lost Profits

ABDC has suffered lost profits of approximately $750,000 - $925,000, which is based upon Kohll's failure to purchase between $50 million and $60 million in pharmaceutical products from ABDC. The profit margin on these lost sales was between 1.38% and 1.52%.

### B. Attorneys' Fees and Costs

Pursuant to Paragraph 9.5 of Exhibit 3 to the PVA, "[t]he successful party in any legal action . . . may recover all costs, including reasonable attorneys' fees." As of the filing of Plaintiff's Pretrial Memorandum, ABDC has incurred approximately $175,000 in attorney's fees and costs. ABDC reserves the right to seek all costs and attorneys' fees from Kohll's incurred through trial and any post-trial proceedings, including any appeals.

### C. Interest

ABDC reserves the right to seek interest from Kohll's pursuant to any applicable contractual and/or statutory provisions.

### IV. List of Names and Addresses of Witnesses

#### A. Fact Witnesses

ABDC anticipates calling the following individuals as fact witnesses at trial:

1. David Kohll
   107 South 128th Plaza
   Omaha, Nebraska 68154

2. Dennis Witkowski
   3344 North Pebble Rapids Place
   Tucson, Arizona 85712

3. Cecile Zeigler
   476 Ferncastle Drive
   Exton, Pennsylvania 19341

4. William Brazell
   2123 Hightop Lane Northeast
   Rochester, Minnesota 55906

#### B. Damages Witnesses

ABDC anticipates calling one of the following individuals as a damages witness at trial:

1. Joseph D. Perrault
   1300 Morris Drive
   Chesterbrook, PA 19087

2. Timothy Waitte
   1300 Morris Drive
   Chesterbrook, PA 19087

### V. Schedule of Exhibits

Attached hereto is Exhibit A, which sets forth the exhibits to be offered at trial by ABDC.

ABDC reserves the right to add newly produced documents to this Schedule of Exhibits.

### VI. Estimate of Number of Days Required for Trial

ABDC estimates that two to three days will be required for trial.

## VII. Special Comments and Expected Opinion Testimony from a Lay Witness

ABDC anticipates calling either Joseph D. Perrault or Timothy Waitte as a lay witness who will offer opinion testimony regarding the damages ABDC suffered due to Kohll's breach of contract. Either one of these individuals will testify as to the damage calculations set forth in Section III(A) of Plaintiff's Pretrial Memorandum. Documents covering the lay opinions of this witness were previously produced to Kohll's during the course of discovery.

## VIII. Objections to Admissibility of Exhibits Based on Authenticity

While reserving its right to brief this subject more fully via a motion in limine pursuant to the Court's Scheduling Order, ABDC respectfully submits that it objects to the admissibility of any documents produced by Kohll's which were altered by David Kohll prior to their production by his attorneys. Those documents are not authentic, as David Kohll admitted in his deposition that he altered them before production. David Kohll also admitted that he still has the original, authentic documents in his possession, which have never been produced by Kohll's. Accordingly, ABDC objects to the admissibility of any documents produced by Kohll's which were altered by David Kohll prior to production.

## IX. Objections to Admissibility of Evidence Expected to be Offered

While reserving its right to brief this subject more fully via a motion in limine pursuant to the Court's Scheduling Order, ABDC respectfully submits that it objects to the admissibility of any evidence, including documents and testimony, offered by Kohll's relating to negotiations and discussions between ABDC and Kohll's prior to the execution of the PVA. As outlined above in the facts, the PVA and First Amendment are integrated documents. Accordingly, ABDC objects to the admissibility of any evidence, including documents and testimony, offered

by Kohll's relating to negotiations, discussions, and offers that occurred prior to the execution of the PVA.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td><u>/s/ Donald W. Myers</u>_____<br>Craig D. Mills (PA I.D. No. 81331)<br>Donald W. Myers (PA I.D. No. 92704)<br>Buchanan Ingersoll & Rooney, PC<br>Two Liberty Place<br>50 South 16th Street, Suite 3200<br>Philadelphia, PA 19102<br>(215) 665-8700</td></tr>
<tr><td>Dated:  July 12, 2010</td><td>*Attorneys for Plaintiff*</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I, Donald W. Myers, hereby certify that a copy of the foregoing was served via e-filing, this 12th day of July, 2010, upon the following counsel:

> Joseph B. Mayers, Esquire
> John Anastasia, Esquire
> MAYERS, MENNIES & SHERR, LLP
> 3031 Walton Road
> Building A, Suite 330
> P.O. Box 1547
> Blue Bell, Pennsylvania  19422-0440

In addition, one courtesy copy was delivered to the Court via regular mail.

*/s/ Donald W. Myers*_____
Donald W. Myers